IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD FALKOSKY, | ) | Case No. 1:19-cv-2632 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.  Introduction

Plaintiff, Edward Falkosky, seeks judicial review of the final decision of the
Commissioner of Social Security denying his application for a period of Disability Insurance
benefits ("DIB") under Title II of the Social Security Act.  This matter is before me pursuant to
42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b), and the parties consented to my
jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 10.  Because the ALJ
failed to follow the proper legal standards in determining Falkosky's residual functional
capacity, the ALJ's decision must be VACATED and REMANDED for further consideration
consistent with this opinion.

## II.      Procedural History

Falkosky applied for DIB in February 2017.  (Tr. 145-146).[1]  He alleged that he became disabled on November 20, 2011, due to degenerative track disease of left hip, high blood pressure, hyperlipidemia, Dupuytren's contracture, finger stiffeners, osteoarthrosis, carpal tunnel syndrome, trigger finger, contraction of palm, abnormal enzymes, high cholesterol, and degenerative arthritis of hand.  (Tr. 145, 160).  The Social Security Administration denied Falkosky's application initially and upon reconsideration.  (Tr. 56, 63).  Falkosky requested an administrative hearing.  (Tr. 86).  ALJ Peter Beekman heard Falkosky's case on July 18, 2018 and denied his claim in an October 29, 2018 decision.  (Tr. 18-27).

On September 18, 2019, the Appeals Council denied further review, rendering ALJ Beekman's decision the final decision of the Commissioner.  (Tr. 1-3).  On November 11, 2019, Falkosky filed a complaint seeking judicial review of the Commissioner's decision.  ECF Doc. 1.

## III.     Evidence

### A.      Relevant Medical Evidence

On February 7, 2012, Falkosky treated with Felix C. Nwaokafor, MD, for "trigger finger."  Falkosky reported intermittent locking of the left pinky finger for months and that it had recently become more painful at the palm.  Dr. Nwaokafor diagnosed trigger finger, administered a cortisone injection and advised Falkosky to continue finger exercises (stress ball) and to follow up "as needed."  (Tr. 225-226).

In September 2012, Falkosky began treating with Thomas Ginley, D.O., for trigger finger of the left hand.  Dr. Ginley referred Falkosky to an orthopedic hand specialist.  (Tr. 324-326).

---

[1] The administrative transcript is in ECF Doc. 8.

On November 28, 2012, at a follow-up appointment for hyperlipidemia, Falkosky reported doing yard work and exercising on a stationary bike for ten minutes a day.  (Tr. 318).

On April 5, 2013, Falkosky reported tingling pain in his arms and hands on his right more than the left.  (Tr. 314).  Dr. Julia Bruner examined Falkosky and observed a full range of motion of the shoulders, elbows and wrist, but she did not document any observations related to his fingers or the use of his hands.  She diagnosed peripheral neuropathy and ordered an EMG.  She advised Falkosky to use wrist splints "as needed."  Falkosky declined any changes to his medications.  (Tr. 315).

After reviewing the results of Falkosky's EMG, Dr. Ginley noted that it was positive for carpal tunnel syndrome.  (Tr. 312-314).  In May 2013, Dr. Ginley again referred Falkosky to an orthopedist hand specialist.  (Tr. 312).

On May 9, 2014 an X-ray of Falkosky's right hand showed degenerative changes on the radial aspect of the wrist. An X-ray of his left hand showed mild or minor degenerative changes. (Tr. 342-343).  The same day, Falkosky consulted with Dr. Michael Keith regarding his bilateral hand numbness and tingling.  Dr. Keith discussed treatment options, including conservative management, braces, corticosterioid injections and surgical management.  (Tr. 304).

On July 11, 2014, Falkosky followed-up with Dr. Keith.  Falkosky complained of worsening right hand pain and painful forearm as well as triggering and locking of fingers.  (Tr. 252).  Physical examination was positive for Phalen's and Tinel's signs and palmar wrist pressure.  (Tr. 301).  Falkosky declined injections, and Dr. Keith prescribed braces for carpal tunnel syndrome.  (Tr. 302).  Falkosky returned to Dr. Keith in August 2014.  Dr. Keith administered corticoid injections.  (Tr. 260).

Falkosky was last insured on December 31, 2014.[2]  In July 2015, he returned to see Dr. Keith.  He continued to complain of trigger fingers with locking and swelling, numbness and tingling.  (Tr. 298).  Falkosky underwent surgical release of his trigger fingers and carpal tunnel release surgery in August 2015.  He underwent two more surgical releases of trigger fingers in September 2016 and April 2017.  (Tr. 394).

**B.      Relevant Opinion Evidence - State Agency Consultants**

On March 11, 2017, state agency physician, Leon D. Hughes, M.D., reviewed Falkosky's file and opined that he had the severe impairment of carpal tunnel syndrome but stated there was insufficient evidence to evaluate Falkosky's claim.  (Tr. 59).  On March 7, 2017, Stephen Sutherland, M.D., reviewed Falkosky's records and affirmed Dr. Hughes's opinions.  (Tr. 66-67).

**C.      Relevant Testimonial Evidence**

Falkosky testified at the ALJ hearing before ALJ Beekman.  (Tr. 37-50).  Falkosky had begun working as an extruder operator in 1974.  In that job he was required to lift and pull up to 100 pounds by himself.  (Tr. 37).

Falkosky began to have problems with his hands in 2011.  He was given injections for his symptoms.  In 2013, his hands started "locking up."  In 2015, after his date last insured, he started having surgeries because he could no longer tolerate the injections.  (Tr. 39).  The injections allowed him to bend his fingers but he could not get all of the fingers treated at the

---

[2] The ALJ considered some evidence of Falkosky's medical treatment after his date last insured.  (Tr. 23).  However, as argued by the Commissioner, this evidence was of little probative value.  *Strong v. Social Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004).  Falkosky was required to establish disability on or before the date of last insurance.  *See* 42 U.S.C. § 423(a)(1)(A), (c)(1);  *see also Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

same time.  (Tr. 41).  Falkosky testified that his condition was equally bad in both hands. However, his carpal tunnel syndrome was worse on the right.  (Tr. 40).

Between 2011 and 2014, Falkosky was living with his mother.  He was able to drive a car and drove his mother to Pennsylvania several times.  (Tr. 45-46).  He testified that he was able to lift a gallon of milk, but had trouble gripping objects.  (Tr. 42-43).  When he tried to lift anything, his back and shoulders would hurt later in the evening.  (Tr. 46).

Vocational Expert ("VE") Michael Klein also testified at the hearing.  (Tr. 50-53).  The ALJ asked the VE to consider an individual of Falkosky's age and education who could lift 50 pounds occasionally, 25 pounds frequently, could stand, walk or sit six out of eight hours; could frequently use a ramp or stairs; could occasionally use a ladder, rope or scaffold; had no limitations in his ability to balance, stoop, kneel, crouch, push/pull, reach in all directions and feel; could frequently handle and finger; had no visual or communication deficits; and must avoid high concentrations of dangerous machinery and unprotected heights.  The VE testified that this individual would be able to perform Falkosky's previous job of extruder operator as it was described by the DOT, but not as he actually performed it.  (Tr. 52).  However, the VE opined that Falkosky could perform other jobs in the national economy such as cleaner, packer and production helper.  (Tr. 52-53).  If the individual was limited to light exertional work (lifting/carrying 20 pounds occasionally and 10 pounds frequently) the VE opined that he would be able to perform the jobs of marker, weigher and office cleaner.  (Tr. 53).

## IV.    The ALJ Decision

The ALJ made the following paraphrased findings relevant to this appeal:

5.  Falkosky had the residual functional capacity to perform less than a full range of medium work.  He could lift/carry 50 pounds occasionally and 25 pounds frequently; could stand, sit and/or walk for six out of eight hours during the workday; could constantly push/pull and use a foot pedal; could constantly

      balance, kneel, stoop and crouch; could frequently crawl; could constantly
      reach and constantly feel; could frequently handle and finger with both hands;
      had no visual or communications deficits; and must avoid high concentrations
      of dangerous machinery and unprotected heights.  (Tr. 21).

6. Considering Falkosky's age, education, work experience and residual
      functional capacity , he was able to perform his past work as an extruder
      operator, as it was generally performed.  (Tr. 24-25).

10. Alternatively, there were jobs that existed in significant numbers in the
      national economy that Falkosky could perform.  (Tr. 25).

Based on all of his findings, the ALJ determined that Falkosky was not under a disability from

November 20, 2011 through December 31, 2014, the date last insured.  (Tr. 26).

## V.      Law & Analysis

### A.      Standard of Review

The court reviews the Commissioner's final decision to determine whether it was

supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C.

§§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person

would accept as adequate to support a conclusion.  *Rogers*, 486 F.3d at 241; *Biestek v. Comm'r

of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'

backs it up." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   "[T]he threshold for

such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

Substantial evidence in this context "means – and means only – 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Id.; see also, O'Brien v.

Comm'r of Soc. Sec.*, No. 19-2441, 2020 U.S. App. LEXIS 25007, at *15, ___ F. App'x ___ (6th

Cir. Aug 7, 2020).

6

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio

7

Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.    Residual Functional Capacity and Developing the Record

Falkosky argues that the ALJ's RFC determination was not supported by substantial evidence and that he erred by failing to develop the record on Falkosky's impairments. Specifically, he argues that, because there was no medical opinion in the record regarding his physical limitations, the ALJ improperly "played doctor" in determining his RFC.  The Commissioner concedes that there were no medical opinions related to Falkosky's functional limitations.  ECF Doc. 13 at 7.  However, he argues that the ALJ properly evaluated Falkosky's

evidence when he made his RFC finding.  The Commissioner argues that the limited medical evidence was not complex and showed that Falkosky was not disabled during the relevant time period.  Thus, the Commissioner argues that substantial evidence (or the lack thereof) supported the ALJ's decision.  The Commissioner's argument can be summarized as: 1) Falkosky was responsible for producing evidence of disability; 2) the paucity of evidence itself supported the ALJ's finding; and 3) the ALJ was not required to obtain a medical opinion concerning Falkosky's functional abilities.  ECF Doc. 13 at 9.

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. §§ 404.1520(e).  Here, there was little evidence to analyze.  Indeed, the state reviewing physicians found that Falkosky's records showed that he had a severe impairment but concluded there was insufficient evidence to form an opinion as to how that impairment impacted his functional abilities.  If there was, in fact, insufficient evidence to opine on the effect that Falkosky's impairment had on his ability to function, whose responsibility was it to gather more evidence?  That is the starting point of our discussion.

Both sides cite the agency's regulations to support their arguments, and it is easy to see why.  20 CFR § 404.1545(a)(3) provides in relevant part:

> In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (e).)

Thus, the regulations place the responsibility of providing evidence on the claimant, but also require the Commissioner to develop a complete record by obtaining opinion evidence, if necessary.

Courts within the Sixth Circuit attempting to interpret this regulation and to hold both the claimant and the agency responsible, decided a line of cases with which we must reckon.  In 2008, a court in this district reviewed a case in which there was only one medical opinion, from a state agency reviewing physician who reviewed the record two years before the ALJ made an RFC finding and without the benefit of two years' worth of medical records.  *Deskin v. Comm'r of Soc. Sec.,* 605 F. Supp. 2d 908 (N.D. Ohio 2008).  Because Deskin's record contained two years' worth of medical records post-dating the medical opinion, the court held that the Commissioner had not developed the record as required by the regulations.  *Deskin,* 605 F. Supp. 2d at 911.  *Deskin* held that an ALJ "may not interpret raw medical data in functional terms," and, with that principle in mind, established the following rule:

> . . . [when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Id.* at 912 (quotation marks and citation omitted).

*Deskin* was not met with open arms.  *Shelley v. Comm'r of Soc. Sec.,* 2019 U.S. Dist. LEXIS 144744 at *19 (S. Dist. Ohio 2019).  Another district court in the Sixth Circuit found that it was "not representative of the law" because the ALJ, "not a physician is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole."  *Henderson v. Comm'r of Soc. Sec.,* 2010 U.S. Dist. LEXIS 18644 (N.D. Ohio Mar. 2, 2010).  Roughly a year

and a half after *Henderson*, the *Deskin* court reaffirmed the ruling but made several caveats regarding its application.  *See Kizys v. Comm'r of Soc. Sec.,* No. 3:10-cv-25, 2011 U.S. Dist. LEXIS 122296 (N.D. Ohio Oct. 21, 2011).  *Kizys* clarified that *Deskin* potentially applies in only two circumstances:  1) when an ALJ made an RFC determination based on no medical source opinion; or 2) when an ALJ made an RFC based on an "outdated" medical source opinion "that does not include consideration of a critical body of objective medical evidence."  *See Kizys*, 2011 U.S. Dist. LEXIS 122296at *6-7; *see also Raber v. Comm'r of Soc. Sec*., No. 4:12-cv-97, 2013 U.S. Dist. LEXIS 43428, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (explaining post-*Deskin* application of the rule).  Falkosky's claim involves the first *Deskin* circumstance because there was no medical opinion as to his functional limitations.

Deskin *is not controlling.  Nevertheless, because it is now commonly referred to as the "Deskin Rule," and is directly applicable to Falkosky's argument, it cannot be ignored.  *See Shelley,* 2019 U.S. Dist. LEXIS at *18-23; *Bryant v. Comm'r of Soc. Sec.,* No. 3:15-cv-354, 2017 U.S. Dist. LEXIS 17126 at *8-10 (S.D. Ohio Feb. 7, 2017); *Raber v. Comm'r of Soc. Sec.,* 2013 U.S. Dist. LEXIS 43428 at *45-46.  Moreover, when the court applies the reasoning of *Deskin* and *Kizys* to the facts presented by *this* case, they make good sense.  Given the persuasive authority of *Deskin* and the decade-plus of cases that have applied the *Deskin* "rule," the court can safely say that, in some circumstances, an ALJ *is* required to obtain a medical opinion in furtherance of his 20 CFR § 404.1545(a)(3) responsibility to develop the record.  Without doubt, it is the *ALJ's* responsibility (not a physician's) to determine a claimant's RFC based on the evidence as a whole.  Equally clear is the claimant's burden to produce evidence in support of his claim.  But, once it is determined that the evidence supports a finding of a severe impairment, the ALJ may be obligated to develop a record that provides substantial evidence supporting his or

her RFC finding.  The question then becomes, "did the ALJ have a responsibility to further develop the record in this case?"

The Commissioner argues that there was substantial evidence supporting the ALJ's RFC finding.  The ALJ was tasked with considering all relevant medical and other evidence.  20 C.F.R. §§ 404.1520(e).  The ALJ stated that he considered Falkosky's testimony, however he found that Falkosky's allegations were out of proportion to the medical evidence.  The ALJ also stated that he considered the medical treatment notes of Dr. Felix Nwaokafor, Thomas Ginley, D.O., Julia Bruner, M.D., Michael Keith, M.D., an April 2013 EMG, and the fact that Falkosky did not follow-up with several referrals.  (Tr. 23).  He then stated:

> During the relevant timeframe, I find that the objective medical evidence, clinical findings on examination, and course of treatment in this case are not consistent with disabling physical impairment or disabling pain and are more consistent with the residual functional capacity.  As recounted above, the claimant had some pain, numbness, and tingling of his hands treated with braces. He received some injections for trigger fingers and the claimant testified that the injections provided him with three to eight months of relief.  As recounted above, the claimant did not pursue several referrals and he did not undergo surgical management until late August 2015.  From all of this, I find that the claimant's symptoms and limitations were not as severe as alleged during the relevant timeframe.  (Tr. 22-23).

None of the treatment notes the ALJ discussed assessed Falkosky's functional abilities.  Rather, they documented Falkosky's symptoms and the physician's recommended treatments.  There was very little discussion in the evidence of how Falkosky's symptoms affected his daily activities.  Even the ALJ's finding that the injections provided "relief" did not explain how that impacted Falkosky's ability to function.  The ALJ seemingly did not take into account the fact that Falkosky was not able to receive injections for all of his fingers at the same time.  (Tr. 41). Moreover, it is difficult to understand how the ALJ gleaned Falkosky's functional abilities from the symptoms and treatments (or lack thereof) documented in his physicians' notes.

After reviewing Falkosky's records, the state-agency reviewing physicians recognized that he had the impairment of carpal tunnel syndrome during the relevant time period and found that there was insufficient evidence to determine how that impairment affected his functional abilities.  (Tr. 58-60, 66-67).  The ALJ rejected their decision, stating:

> I give little weight to their opinions because there is sufficient medical evidence of record during the relevant timeframe.  Instead, I find the claimant could perform medium exertional work with the postural, manipulative, and environmental limitations listed above.  Significantly, I find the claimant could perform medium exertional work with constant reaching and constant feeling bilaterally and he could frequently handle and finger bilaterally.  In particular, I decline to reduce the claimant to light work and I decline to impose more restrictive manipulative limitations because of the limited course of treatment during the relevant timeframe, with several referrals not pursued by the claimant.  (Tr. 24).

Absent from the ALJ's decision is any explanation of how he could make a detailed RFC finding when the reviewing physicians could not?[3]  In his own words, he based his RFC finding on the *lack* of evidence – namely a lack of treatment and/or Falkosky's failure to obtain more aggressive treatment during the relevant time period.  A physician may have had the expertise to opine that Falkosky's decision to pursue conservative treatment was indicative of his ability to perform work at the medium exertional level.  But the ALJ did not have such expertise.

The Commissioner argues that the ALJ was not required to base his RFC on any one medical opinion.  I agree.  In *Mokbel-Aljahmi v. Comm'r of Soc. Sec.,* the Sixth Circuit held that the ALJ was not required to obtain an opinion from another physician after assigning no weight to a medical opinion in the record.  732 F. App'x 395, 401 (6th Cir. 2018).  But in *Mokbel-Aljahmi,* the ALJ had rejected a medical source opinion that the claimant was limited to less than light work because that same physician had noted that the claimant's muscle bulk and tone were

---

[3] The Commissioner points out that the ALJ received new evidence, Exhibit 6F, that the state agency reviewing physicians had not seen.  ECF Doc. 13 at 7.  However, this exhibit shows records post-dating Falkosky's date last insured, which (as argued by the Commissioner) was of little probative value.

normal, as was his gait.  *Id.* at 400.  Thus, the same evidence supporting the rejection of a medical source opinion also supported the ALJ's RFC finding.

Support for an ALJ's RFC finding is often described in the rejection of a medical opinion because the treating physician rule requires an ALJ to cite evidence from the record supporting the weight assigned to such an opinion.  The *Kizys* court recognized this phenomena in distinguishing the *Henderson* case.  In *Henderson,* which rejected the *Deskin* rule, the ALJ had analyzed at least three medical opinions related to the claimant's functional limitations.  The *Kizys* court noted that, in *Henderson,* the ALJ had three medical source opinions as "a guide to peg a residual functional capacity finding."  *Kizys*, 2011 U.S. Dist. LEXIS at *5.  So, even though the ALJ had rejected the physicians' opinions, he had done so based on other evidence in the record related to the claimant's functional limitations.  In contrast, Falkosky's record contained no medical opinions on his functional limitations.  Thus, the ALJ had no medical opinions on Falkosky's functional abilities to evaluate.  And any evidence of Falkosky's condition that he cited to support his RFC finding necessarily supported only his own lay conclusion regarding Falkosky's functional capacity.

The Commissioner cites cases supporting the proposition that a limited course of treatment is relevant and may be relied upon by the ALJ.  ECF Doc. 13 at 9.  I do not disagree with the holdings of these cases.  But these cases involved the ALJ's assessment of medical opinions.  For example, the Commissioner cites *Soeder v. Comm'r of Soc. Sec.,* for the proposition that limited treatment and a lack of medical opinion evidence are valid reasons for not assessing greater RFC limitations.  2014 U.S. Dist. LEXIS 100985 at *49-50.  But *Soeder* involved the assessment of several medical opinions and the assignment of greater weight to a non-examining physician's opinion than to the opinion of a treating physician.  The *Soeder* ALJ

14

based his RFC finding, in part, on the non-examining source's opinion and the evidence he cited in analyzing the opinion of the treating source.  Thus, the ALJ's RFC finding was not formed in the absence of *any* medical opinion or upon his own opinion of what the claimant was able to do despite his impairments.  *Id.*

The court also agrees with the Commissioner that an ALJ is not *always* required to have a medical opinion to determine a claimant's RFC.  *Deskin* and *Kizys* acknowledge that "an ALJ may make a residual functional capacity finding without a physician's assessment 'where the medical evidence shows relatively little physical impairment.'" *Kizys,* 2011 U.S. Dist. at *3, citing *Deskin,* 605 F.Supp.2d at 912.  But here, rather than showing little physical impairment, the records show that Falkosky had severe impairments but sought little treatment or only conservative treatment.[4]  In the absence of any medical opinion, the ALJ evaluated Falkosky's records and inferred from his limited treatment record that he was able to perform work at the medium level during the relevant period.  Only a medical expert should be able to draw such conclusions.  The ALJ's RFC finding does not appear to be based on substantial evidence.  Rather, it appears to be based on his own extrapolation from the limited medical records submitted by Falkosky.

This case would be different had the ALJ cited medical records demonstrating Falkosky's functional abilities.  For example, the ALJ might have been able to forego a medical opinion if he had cited medical records showing that Falkosky was capable of lifting 50 pounds occasionally or constantly pushing and pulling.  But he didn't.  Instead, he cited Falkosky's reported symptoms, the physicians' suggested treatments, and the fact that Falkosky didn't

---

[4] Falkosky's records before the date last insured show that his fingers were locking; that he had degenerative changes in his hands; and that he'd been diagnosed with carpal tunnel syndrome.  (Tr. 225-226, 252, 312-314, 342-343).  It cannot be said that this is only a "little" physical impairment.  Even the state agency reviewers found that Falkosky's carpal tunnel syndrome was severe.

pursue more aggressive treatments.  Then, he made a detailed RFC finding that could only have been based on his own opinion of Falkosky's functional abilities.  If there was substantial evidence in the record to support such conclusions, the ALJ failed to cite it and, thereby, failed to build a logical bridge between the evidence and his RFC finding.

The Commissioner argues that it is "telling" that Falkosky's attorney did not ask the ALJ to obtain additional evidence, such as a medical expert at the hearing.  ECF Doc. 13 at 14. However, the Commissioner has not cited any authority that a claimant's failure to request additional opinion evidence constitutes a waiver of Falkosky's argument.  As already stated, the ALJ had some responsibility to develop the record; and, here, the state agency reviewing physicians opined that there was not enough evidence to determine Falkosky's functional limitations.  Prior to the issuance of the ALJ's decision, Falkosky's counsel may have assumed that the ALJ would accept Falkosky's own statements regarding what he was able to do during the relevant time period.  He could not have known, in advance, that the ALJ would find Falkosky's statements to be inconsistent with the objective evidence.

Because there was no medical opinion on Falkosky's functional limitations, the ALJ had a responsibility to further develop the record under 20 CFR § 404.1545(a)(3).  Rather than obtaining a medical opinion related to the relevant time period, the ALJ reviewed Falkosky's records and made conclusions about Falkosky's functional abilities.  Because the ALJ was not a medical expert, he did not have the expertise to draw such conclusions.  Consequently, his RFC finding was not supported by substantial evidence.  And, even if the record may have contained substantial evidence that could have supported his RFC finding, the ALJ did not build a logical bridge between such evidence and his RFC finding.  Because the ALJ failed to follow the proper

legal standards in determining Falkosky's residual functional capacity, the ALJ's decision must be vacated and the case remanded for further consideration consistent with this opinion.

### C.     Falkosky's Subjective Statements

Falkosky also argues that the ALJ inadequately assessed his credibility because the ALJ did not take his stellar work history into account.  ECF Doc. 11 at 10-11.  The ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, 1996 SSR LEXIS 4, was clarified in SSR 16-3p, 2016 SSR LEXIS 4 to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).  The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." See 2016 SSR LEXIS 4,[WL] at *11.  Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1.   Daily activities;

2.   The location, duration, frequency, and intensity of pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.   The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.   Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.   Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.   Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

17

*Id.,* 2016 SSR LEXIS 4, 2017 WL 5180304, at *7-8; see also 20 C.F.R. §§ 404.1529(c),

416.929(c) and former SSR 96-7p, 1996 SSR LEXIS 4.

Even after SSR 16-3 clarified the rules concerning subjective symptom evaluation and

removed the term "credibility" from the regulations, the procedures for reviewing an ALJ's

assessment under SSR 16-3p, 2016 SSR LEXIS 4 are substantially the same as the procedures

under SSR 96-7p, 1996 SSR LEXIS 4.  *Delong v. Comm'r of Soc. Sec.,* No. 2:18-cv-368, 2019

U.S. Dist. LEXIS 16167 (S. D. Ohio, Feb. 1, 2019).  Therefore, courts agree that the prior case

law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, 2016

SSR LEXIS 4, with few exceptions.  *Whicker-Smith v. Comm'r of Soc. Sec.,* No. 1:18-cv-52.

2019 U.S. Dist. LEXIS 29085 at *16; *See Duty v. Comm'r of Soc. Sec.,* 2018 U.S. Dist. LEXIS

159013, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the

extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

A claimant's subjective symptom complaints may support a disability finding only when

objective medical evidence confirms the alleged severity of the symptoms.  *Blankenship v.*

*Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).  An ALJ is not required to accept a claimant's

subjective symptom complaints, however, and may properly discount the claimant's testimony

about his symptoms when it is inconsistent with objective medical and other evidence.  *See Jones*

*v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4

*15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity,

persistence, and limiting effects of symptoms, and we will evaluate whether the statements are

consistent with objective medical evidence and the other evidence.").  In evaluating a claimant's

subjective symptom complaints, an ALJ may consider several factors, including the claimant's

daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his

symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions.  SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).

Here, the ALJ considered Falkosky's statements regarding his limitations during the relevant time period and found that they were not as severe as alleged.  First, he found that the objective medical evidence did not support the severity alleged by Falkosky.  This finding was based, in part, on the fact that Falkosky sought limited treatment during the relevant time period. This was an appropriate factor to consider in this context.[5]  The ALJ also cited records showing that Falkosky was driving during the relevant time period; had gotten bed bug bites from staying at a hotel; drank four to five beers a day and ate fast food daily; reported doing yard work; and had refinished a bathtub.  (Tr. 24).  Although it is not entirely clear how the ALJ related all of these facts to Falkosky's statements regarding his ability to use his hands, it was generally appropriate for the ALJ to compare Falkosky's treatment notes to the statements he made regarding his functional abilities.  And, it was not necessary that he expressly consider factors such as Falkosky's claimed stellar work history.

Falkosky cites cases holding that a claimant's *poor* work history might detract from the claimant's overall credibility.  *See e.g. Thompson v. Comm'r of Soc. Sec.,* 2017 U.S. Dist. LEXIS 127615, at *25 (S.D. Ohio Aug. 11, 2017).  He also cites authority for the idea that a claimant's

---

[5] It was appropriate for the ALJ to discount Falkosky's statements of severity based on the fact that he sought little treatment during the relevant time period.  However, because 20 CFR § 404.1545(a)(3) places some responsibility on the ALJ to develop a record to determine the claimant's functional abilities, for the reasons discussed in detail above, it was not appropriate for the ALJ to make functional limitations conclusions based on Falkosky's limited treatment.

positive work history or attempts to work may bolster credibility. *See e.g., Hedden v. Comm'r of Soc. Sec.,* 2011 U.S. Dist. LEXIS 153704 (W.D. Mich. Sept. 6, 2011); *White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 789 (6th Cir. 2009). But he has not cited any authority requiring the ALJ to consider his work history or expressly evaluate it in his decision. Nor is the court aware of any.

If an ALJ discounts or rejects a claimant's subjective complaints, he must state clearly his reasons for doing so. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). But, an ALJ's decision need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as she acknowledged and examined those [factors] before discounting a claimant's subjective complaints." (quotation omitted)). Here, the ALJ did not err by failing to discuss Falkosky's positive work history.

Moreover, reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. *Whicker-Smith*, 2019 U.S. Dist. LEXIS 29085, *16-17 (S.D. Ohio, Feb. 25 ,2019). Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony when there are inconsistencies and contradictions

among the medical records, [his] testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Because the ALJ applied proper legal standards when he evaluated Falkosky's subjective symptom complaints, and because his conclusions were supported by substantial evidence, the ALJ's assessment of Falkosky's subjective statements fell within the Commissioner's "zone of choice."  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The court must reject Falkosky's complaint about the ALJ's handling of his subjective symptom complaints.  However, as already explained above, the ALJ's decision must be vacated on other grounds.

**VI.    Conclusion**

Because the ALJ failed to follow the proper legal standards in determining Falkosky's residual functional capacity, the ALJ's decision is VACATED and the case is REMANDED for further consideration consistent with this opinion.

IT IS SO ORDERED.

Dated: September 10, 2020

Thomas M. Parker
United States Magistrate Judge